## In re TILTON.

### TILTON v. HELMS et al.

(Circuit Court of Appeals, Ninth Circuit. December 15, 1924. Rehearing Denied January 26, 1925.)

#### No. 4254.

1. **Principal and agent ⬅3(3)—Receipts for money to be loaned held to make maker of receipt agent of lenders.**

Receipts acknowledging receipt of money for purposes of loans, the sums to be returned, together with interest, creates relationship of principal and agent between lenders and maker of receipts.

2. **Bankruptcy ⬅414(3)—Evidence of obtaining credit on false statements held not to warrant refusal of discharge.**

Where money lender executed receipts to persons from whom he received money to be loaned, promising to return the same, with interest, at agreed rate, conflicting evidence as to certain of such transactions *held* not of that strength and convincing character to warrant

refusal of his discharge in bankruptcy for obtaining money on credit by material false statements in writing.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Netterer, Judge.

In the matter of George E. Tilton, Bankrupt. From an order denying his application for discharge, which was opposed by Anna J. Helms and others, the bankrupt appeals. Reversed and remanded, with directions.

Tilton, involuntary bankrupt, appeals from an order denying discharge in bankruptcy. The District Court found that Tilton obtained money and property on credit upon material false statements in writing made by him to certain persons named, for the purpose of obtaining credit from such persons. Section 14b, Bankruptcy Act (Comp. St. § 9598). At various times in 1919 the bankrupt obtained from Anna J. Helms sums aggregating $6,300, and gave her several receipts, which, except as to dates and amounts, read as follows:

"Received from Anna J. Helms, five hundred dollars, for loan purposes, to be loaned and returned six months from date, plus interest at the rate of 10 per cent. per annum.

"$500.00. G. E. Tilton. T–6."

Certain sums were also obtained from Elizabeth Keelan, to whom Tilton gave similar receipts.

The testimony of Anna Helms was that Tilton told her he loaned money—always on good security—taking only one-third the value; that she turned over to Tilton $6,300, and withdrew $2,000; that originally the receipts were for six months; that the bankrupt exchanged the $1,000 receipts for $500, because he could handle them better; that he promised the witness her money at any time she wanted it, provided he had two weeks' notice in advance; that he paid the interest regularly until the bankruptcy; that before turning over $300 to Tilton in September, 1919, he showed her a houseboat upon which loan was applied for, and that, after examination of the houseboat by them, she gave him $300 to lend on that security, and took his receipt therefor; that after bankruptcy Tilton told her he had put the money in a general fund, and had converted it to his personal use; that he then wished to change the receipts into promissory notes, and did so change two of the receipts, and that he had paid something on the notes; that, if she had known Tilton intended to put the money to his own use, she

would not have loaned him the money; that she never examined any property, except the houseboat, upon which the $300 was to have been loaned. Elizabeth Keelan's case is generally similar to that of Mrs. Helms.

The bankrupt testified that he never told Mrs. Helms he would loan her money for her; that he borrowed the money with the understanding that he could use it in his business and that he would repay her; that he told her he was making loans, and that if she would give him reasonable notice when she wanted her money he could always meet it, and on several occasions he had repaid her money. He denied that he ever told her he would act as her agent. Referring to the houseboat transaction, Tilton said that, before going on the trip to look at some pieces of property upon which applications for loans had been made, Mrs. Helms delivered the $300 to him and took his receipt; that after examining the houseboat he declined to make the loan; that Mrs. Helms had originally objected to the form of receipts which he gave, and asked for notes, which he agreed to give her, but that she said it made no difference, and took the receipts; that he had made the notes afterwards, because he wanted legal evidence of his debts put in form which he and his creditors always understood them to be. He denied that he ever had used any of the Helms money in his personal ventures, and said that the transaction was understood at the time to be a loan to him, and that his books would show that the money was always loaned in his name.

George H. Rummens and Tracy E. Griffin, both of Seattle, Wash., for appellant.

Albert J. Allen and Solon T. Williams, both of Seattle, Wash., for appellees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1, 2] The receipts on their faces are acknowledgments of moneys delivered to Tilton for purposes of loans for the benefit of the lenders, the sums to be returned to the persons who turned the moneys over to Tilton, together with interest at the rate of 10 per cent. Tilton's relationship to the owners of the moneys became that of an agent toward his principals. Putting aside for the instant the evidence of the houseboat transaction, it is plain that no particular loans were contemplated by the lenders, and that Tilton, who carried on a loaning business, could use his discretion in honestly making loans, subject to the re-

quirements that the sums be returned six months after date of his receipts to his principals, plus the prescribed interest. There is no evidence that Tilton failed to lend the moneys for which he gave the receipts, or that he made a false statement in the writings with intent to obtain the moneys delivered to him. On the other hand, he testified that all moneys received by him from creditors in the position of Mrs. Helms were actually used, principally in chattel loans, and partly on real estate, and that his books showed a loss of $29,000 on chattels. No attempt was made to rebut Tilton's testimony, although his books were available to the objectors.

The houseboat transaction occurred in September, 1919, or nearly 4½ years prior to the time that Mrs. Helms gave her testimony. Mrs. Helms' version of the circumstances connected with the $300 receipt conflicts with that of Tilton, and, if the facts were as she gave them, the reasonable inference is that Tilton obtained the $300 by a materially false statement in writing, made with intent to deceive; but, if Tilton's statement is correct, Mrs. Helms delivered the $300 to him *before* they left his office to look at certain properties, and it was after examining the houseboat that the loan was refused. No such loan was made, and it is to be observed that there is no evidence tending to show that, when Tilton received the $300, he was financially embarrassed or contemplated business failure. He kept up his interest payments for several years, and his testimony is that not until January, 1921, did he know that he was in embarrassed circumstances.

Considering all the circumstances together, we think the evidence against his application for discharge is not of that strength and convincing character that the law requires as ground for denial of discharge in bankruptcy. We must therefore reverse the order of the District Court, and remand the matter, with directions to dismiss the objections and to grant the application for a discharge.

Reversed.